# National First Mortgage Corporation of Pennsylvania v. Economy Savings Bank PaSA

C.P. of Beaver County, no. 11181 of 1995.

*Robert M. Barnes,* for plaintiffs.
*Donald M. Lund,* for defendant.

KUNSELMAN, *J.,* June 18, 2002—The matter is before the court on the defendant's motion to compel production of documents in the custody of the plaintiff's accountant, S. R. Snodgrass A.C. The plaintiff objects to the production of certain documents on the basis of the accountant-client privilege set forth in 63 P.S. §9.11(a).

A short factual and procedural history is necessary to understand the issue. National First Mortgage Corporation of Pennsylvania was in the business of entering into mortgage loans and selling them to other financial institutions. In that connection, National First entered into a contract with Economy Savings Bank PaSA in which, it alleges, Economy agreed to purchase such loans from it. This suit was filed by National First against Economy

seeking damages arising out of an alleged breach of the agreement by Economy. The complaint sets out four causes of action in four counts and seeks damages for, among other things, the lost value of National First as an ongoing business, the lost value of loans and the lost value of loan servicing.

The relationship between National First and Economy began in 1990. However, National First's parent company, First Federal Savings and Loan Association of Pittsburgh, was placed into receivership in 1991 and Resolution Trust Corporation took over the assets including National First. Resolution Trust Corporation prohibited National First from selling loans to investors, including Economy.

In December 1993, Resolution Trust Corporation sold National First to the Chestnut Corporation. In preparation for that sale, National First retained S. R. Snodgrass A.C. for purposes of auditing its books and to calculate the purchase price for the sale pursuant to a formula which was set forth in the agreement of sale. After the sale, Resolution Trust Corporation authorized the sale of loans and National First began to sell loans to investors again, including Economy.

Eventually, Economy refused to purchase loans and this suit was filed. Extensive discovery has occurred between the parties including depositions, answers to interrogatories and the exchange of documents. The discovery has included the release of voluminous documents to Economy by Snodgrass with National First's consent. The documents released relate to Snodgrass' audits and computation of the purchase price paid by Chestnut Corporation for National First. (Since National First has been

sold, we wonder who is the real party in interest. No issue has been raised in that regard and we, of course, express no opinion with respect thereto.)

Notwithstanding the voluntary release of documents by Snodgrass, National First has withheld its consent to the release of certain documents by Snodgrass. This refusal has precipitated the pending motion to compel. The documents with respect to which National First has claimed the accountant-client privilege include the following: (1) a letter from Joe McGrath, said to be National First's president, to Snodgrass dated February 11, 1994; (2) a letter from Tony Cordera, chief financial officer of National First, to R. Gross regarding the Snodgrass audit (R. Gross is an attorney in Washington D.C. who is outside counsel to National First); (3) notes by Snodgrass of telephone conversations with National First between April 12, 1994, and April 29, 1994; (4) a letter from Snodgrass to Joseph McGrath dated July 8, 1994; (5) notes of a telephone conversation with Tony Cordera dated June 28, 1994; (6) a letter from R. Gross to Snodgrass dated April 28, 1994; and (7) a letter from R. Gross to Snodgrass dated April 13, 1994.

The accountant-client privilege claimed by National First has been codified in the C.P.A. Law. It provides, in relevant part, as follows:

"Except by permission of the client engaging him or the heirs, successors or personal representatives of a client, a licensee or a person employed by a licensee shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed unless the sharing of confidential information is within the peer review process. This provision on confi-

dentiality shall prevent the board from receiving reports relative to and in connection with any professional services as a certified public accountant, public accountant or firm. The information derived from or as the result of such professional services shall be deemed confidential and privileged. Nothing in this section shall be taken or construed as prohibiting the disclosure of information required to be disclosed by the standards of the profession in reporting on the examination of financial statements, or in making disclosures in a court of law or in disciplinary investigations or proceedings when the professional services of the certified public accountant, public accountant or firm are at issue in an action, investigation or proceeding in which the certified public accountant or firm is a party." 63 P.S. §9.11(a).

While there are federal cases interpreting this section, there is a dearth of Pennsylvania appellate case law and few trial court opinions which have been published. Therefore, we will decide the issue as one of first impression since we are not bound by either federal decisions or decisions of our sister trial courts.

We first note that evidentiary privileges are not favored since they are in derogation of the search for truth. *Commonwealth v. Stewart*, 547 Pa. 277, 282, 690 A.2d 195, 197 (1997). Therefore, courts should accept testimonial privileges only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining the truth. *Id.* Thus, our Superior Court has said that "we must construe narrowly the provisions of any privilege that operates to hamper a party's access to in-

formation bearing on matters in litigation before a court of law." *PennDOT v. Taylor,* 746 A.2d 626, 629 (Pa. Super. 2000). Further, "the statute makes only a limited change in the common law, and it does not extend the common law attorney-client privilege to the accountant-client relationships." *Agra Enterprises Inc. v. Brunozzi,* 302 Pa. Super. 166, 171, 448 A.2d 579, 582 (1982).

The attorney-client privilege, if applicable, is absolute. Cf. *Gould v. City of Aliquippa,* 750 A.2d 934 (Pa. Commw. 2000). However, we must conclude that the accountant-client privilege is not absolute. We reach this conclusion for several reasons. First, the statute excepts from the privilege the disclosure within the peer review process. Second, the statute excepts from the privilege the disclosure of information required to be disclosed by the standards of the profession in reporting on the examination of financial statements. Finally, the statute excepts from the privilege the disclosure of information in court or other proceedings when the professional services of the accountant are at issue and the accountant is a party.

Having concluded that the privilege is not absolute, we must look to see if the acceptance of the privilege has a public good which transcends the normally predominant principal of utilizing all rational means to ascertain the truth. In that regard, we note that National First, for all other purposes, no longer exists. Its sole purpose now appears to be a recovery of damages against Economy. In addition, National First has already consented to the disclosure of voluminous documents by Snodgrass to Economy. Thus, to honor the privilege under these cir-

cumstances would give National First a superior position in the search for the truth.

Moreover, it appears that there was not a long-term, ongoing accountant-client relationship between Snodgrass and National First since Snodgrass was retained for the limited purpose of auditing National First's financial statements and computing the purchase price. Like the attorney-client privilege, the purpose of the accountant-client privilege is to insure an atmosphere where the client will transmit all relevant information to the account without fear of future disclosure in subsequent litigation. *Orix USA Corp. v. DVI Inc.,* 37 D.&C.4th 491 (Allegheny Cty. 1997). However, unlike the attorney-client privilege, the intended beneficiary of which is the systematic administration of justice and not the individual client, the intended beneficiary of the accountant-client privilege is the client and the accountant. *Id.* Therefore, to honor the privilege under these circumstances would compromise the search for the truth on the very issue Snodgrass was retained to determine— the value of National First and with the very same information National First claims a privilege from disclosure.

Finally, we observe from our in-camera review of the documents at issue, that for the most part, they discuss the transaction which was under the control of Resolution Trust Corporation. Since Resolution Trust Corporation's purpose is to act as a receiver or conservator of a failed financial institution under the Financial Institutions Reform, Recovery and Enforcement Act, we think the transaction itself is a matter of public concern and importance. For that reason as well, we think the search for the truth outweighs the need to protect the commu-

nications from disclosure. We observed, however, that large portions of Snodgrass' notes of telephone conversations between April 12, 1994, and April 29, 1994 were redacted. The redaction appears to have been done by Snodgrass prior to releasing the documents to counsel for National First. We, of course, do not know whether the redacted material relates to National First or another client of Snodgrass. We will order disclosure of the redacted material as well unless Snodgrass files an affidavit that the redacted material is not related to National First.

An appropriate order is attached.

## ORDER

The motion to compel production of S. R. Snodgrass A.C. documents is granted. National First Mortgage Corporation of Pennsylvania is directed to instruct S. R. Snodgrass A.C. to produce all documents responsive to the subpoena issued by Economy Savings Bank, including all documents identified in paragraph 12 of the motion and including the redacted portions of item 3 in paragraph 12 unless S. R. Snodgrass A.C. submits an affidavit that the redacted portions are not related to National First Mortgage Corporation of Pennsylvania.

Compliance with this order shall occur on or before 4:30 p.m. on the seventh business day following the filing of this order. Counsel for the parties shall submit a consent order for entry which preserves the confidentiality of the documents for all purposes except the within litigation.